UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LEO ALEJANDREZ,<br><br>    Plaintiff,<br><br>    v.<br><br>M. KIRCHER, et al.,<br><br>    Defendants. | Case No. 11-cv-02381-JST (PR)<br><br>**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. No. 55 |

Plaintiff, a California prisoner proceeding pro se and currently incarcerated at California State Prison – Corcoran ("CSP–Corcoran"), filed the instant civil rights action pursuant to 42 U.S.C. § 1983 alleging violations of his constitutional rights when he was incarcerated at Salinas Valley State Prison ("SVSP"). Specifically, plaintiff alleges that SVSP correctional officers shot plaintiff with gas launcher direct impact rounds during an altercation between plaintiff and other inmates. The Court construed the pleadings as alleging an excessive force claim against defendants M. Herrera, R. Loza, O. Ponce, and M. Kircher.[1]

Now before the Court is defendants' motion for summary judgment. Plaintiff has not filed an opposition, and the deadline by which to do so has passed.

**FACTUAL BACKGROUND**

The following facts are undisputed unless otherwise indicated.

On June 24, 2008, correctional staff patrolling SVSP's "C2 yard" observed two inmate members of the Fresno Bulldog prison gang, plaintiff and inmate Ybarra, running toward two

---

[1] The Court also found plaintiff had alleged a due process claim against SVSP correctional officer Frank Colburn. The claim was later dismissed for failure to exhaust administrative remedies. (Dkt. no. 45.)

1   white inmates, Hunt and Morgan. (Pappan Decl., Dkt. no. 33-4, at 3.) As the four inmates met,

2   they began to fight, striking each other in the upper torso and facial region. (Id.) Staff gave

3   numerous orders to stop fighting, but the four inmates ignored these orders. (Id.; Loza Decl. Ex.

4   1; Ponce Decl. Ex. 2; Herrera Decl. Ex. 3.) In order to stop the fight, defendants Herrera, Loza,

5   and Ponce deployed chemical agents from gas launchers. (Id.)

6        During the fight, Herrera utilized a gas launcher and fired six direct impact rounds. (Dkt.

7   no. 33-4 at 3; Herrera Decl. Ex. 3.) The rounds released chemical agents intended to break up the

8   fight. (Id.) Herrera subsequently discharged a single multi-wood round. (Id.) While several of

9   the rounds missed their target, one of the direct impact rounds fired by Herrera struck inmate

10  Morgan, who was fighting inmate Ybarra, in the lower leg. (Id.) The fifth round fired by Herrera

11  broke up the fight between Morgan and Ybarra. (Id.) The multi-wood round fired by Herrera

12  struck inmate Hunt and finally broke up the fight between Hunt and plaintiff. (Id.) Before firing

13  each round, Herrera yelled orders for the inmates to stop fighting. (Id.)

14       Defendant Ponce fired three direct impact rounds from a gas launcher, one of which struck

15  plaintiff in the buttocks. (Dkt. no. 33-4 at 3; Ponce Decl. Ex. 2.) Before firing each round, Ponce

16  yelled orders for the inmates to stop fighting. (Id.) Defendant Loza fired four direct impact

17  rounds from a gas launcher. (Dkt. no. 33-4 at 3; Loza Decl. Ex. 1.) None of them hit plaintiff.

18  (Id.) Before firing each round, Loza yelled orders for the inmates to stop fighting. (Id.)

19       The direct impact rounds fired by defendants did not immediately stop the fighting. (Dkt.

20  no. 33-4 at 3; Loza Decl. Ex. 1; Ponce Decl. Ex. 2; Herrera Decl. Ex. 3.) Instead, the fighting

21  persisted, and plaintiff and inmate Hunt dropped to the ground as they continued to strike each

22  other in the head and torso. (Dkt. no. 33-4 at 19.) Once the wood round fired by defendant

23  Herrera struck inmate Hunt, the inmates complied with staff orders and submitted to restraints.

24  (Dkt. no. 33-4 at 3; Herrera Decl. Ex. 3.) Following the incident, plaintiff had several abrasions to

25  his head, finger, shoulder, and buttocks. (Dkt. no. 33-7 at 2-4.) He was taken to the hospital,

26  where medical staff concluded he had a soft tissue wound on his head and provided him with

27  sutures. (Id.)

28       After the incident, prison staff searched the portion of C2 yard where the inmates were

*United States District Court*
*Northern District of California*

1  fighting and found several "inmate manufactured slashing instruments" that were used during the
2  fight. (Dkt. no. 33-4 at 2.) One of the items was a razor blade melted into a state-issued
3  toothbrush, while another was a razor blade with tape on one end that could be used as a handle.
4  (Id.)

5  During a July 22, 2008 disciplinary hearing, plaintiff pled guilty to the charge of battery on
6  an inmate. (Dkt. no. 33-3 at 2-3.) After entering the guilty plea, he stated "I'm guilty, I did it . . .
7  it's hard to get around this one." (Id.) Plaintiff received a ninety-day loss of good-time credits.
8  (Id.)

## DISCUSSION

### I.  Standard of Review

Summary judgment is proper where the pleadings, discovery, and affidavits show there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." See Fed. R. Civ. P. 56(a). Material facts are those that may affect the outcome of the case. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. See id.

A court shall grant summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial[,] . . . since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The moving party bears the initial burden of identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. Id. The burden then shifts to the nonmoving party to "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" See id. at 324 (citing Fed. R. Civ. P. 56(e) (amended 2010)).

For purposes of summary judgment, the court must view the evidence in the light most favorable to the nonmoving party; if the evidence produced by the moving party conflicts with

evidence produced by the nonmoving party, the court must assume the truth of the evidence submitted by the nonmoving party. See Leslie v. Grupo ICA, 198 F.3d 1152, 1158 (9th Cir. 1999). The court's function on a summary judgment motion is not to make credibility determinations or weigh conflicting evidence with respect to a disputed material fact. See T.W. Elec. Serv., Inc., v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987).

A verified complaint may be used as an opposing affidavit under Rule 56, provided it is based on personal knowledge and sets forth specific facts admissible in evidence. See Schroeder v. McDonald, 55 F.3d 454, 460 & nn.10-11 (9th Cir. 1995) (treating plaintiff's verified complaint as opposing affidavit where, even though verification not in conformity with 28 U.S.C. § 1746, plaintiff stated, under penalty of perjury, contents were true and correct, and allegations were not based purely on information and belief but rather on personal knowledge). Here, plaintiff's verified complaint is considered in opposition to the motion for summary judgment.

## II. Analysis

### A. Standard for Eighth Amendment Excessive Force Claims

In order to state a claim for the use of excessive force in violation of the Eighth Amendment, plaintiff must allege facts that, if proven, would establish that prison officials applied force "maliciously and sadistically to cause harm," rather than in "a good-faith effort to maintain or restore discipline." Hudson v. McMillian, 503 U.S. 1, 6-7 (1992). The extent of injury suffered by an inmate is one of the factors to be considered in determining whether the use of force is wanton and unnecessary. Id. Not every malevolent touch by a prison guard gives rise to a federal cause of action; the Eighth Amendment's prohibition of cruel and unusual punishment necessarily excludes from constitutional recognition de minimis uses of physical force. Id. at 9-10. Guards may use force only in proportion to the need for it in each situation. Spain v. Procunier, 600 F.2d 189, 195 (9th Cir. 1979).

In determining whether the use of force was for the purpose of maintaining or restoring discipline or, rather, for the malicious and sadistic purpose of causing harm, a court may evaluate the need for the application of force, the relationship between that need and the amount of force used, the extent of any injury inflicted, the threat reasonably perceived by the responsible officials,

and any efforts made to temper the severity of a forceful response. Hudson, 503 U.S. at 7. However, courts must accord prison administrators wide-ranging deference in the adoption and execution of policies and practices to further institutional order and security. Bell v. Wolfish, 441 U.S. 520, 547 (1979); Jeffers v. Gomez, 267 F.3d 895, 917 (9th Cir. 2001).

**B.  Excessive Force Claim Against Defendants M. Herrera, R. Loza, and O. Ponce**

Based on the evidence submitted, plaintiff has failed to raise a triable issue as to whether defendants used excessive force by firing direct impact rounds toward him and other fighting inmates. To overcome summary judgment, plaintiff must raise a triable issue of fact establishing that defendants applied force "maliciously and sadistically to cause harm," rather than in a good-faith effort to maintain or restore discipline. He has failed to do so.

First, the evidence shows that the application of some force was necessary to stop the inmate fight and restore order. It is undisputed that when defendants fired the rounds, there was a fight in progress between plaintiff and other inmates. It is undisputed that defendants ordered plaintiff to stop fighting, and that he did not stop fighting when commanded to do so.

Second, there is no evidence that any more than a minimal amount of force was used to stop the fight. Defendants attempted to temper the severity of their response by giving verbal commands immediately prior to firing each round. Verbal commands did not stop the inmates, and the fight continued even after several rounds were fired. Defendants only shot additional rounds as the situation escalated due to the inmates' continued resistance. There is no evidence that the shooting continued after the inmates finally complied with defendants' orders to stop fighting and get down. Plaintiff has not provided any evidence that the force used was more than what was necessary to stop the attack under the circumstances. See Clement v. Gomez, 298 F.3d 898, 903 (9th Cir. 2002) (finding second application of pepper spray was not excessive force because the bodies of the fighting inmates had blocked the initial spray).

Third, the evidence is undisputed that a threat was reasonably perceived by the responsible officials. There was an inmate fight in progress between Fresno Bulldog gang members and white inmates, and at least some inmates were armed with razor blades and other weapons. Defendants were concerned that the inmates could seriously injure or kill each other if the fighting was not

1  stopped. (Loza Decl. ¶ 3; Ponce Decl. ¶ 3; Herrera Decl. ¶ 3.) (Indeed, had the correctional officers merely watched the fight without attempting to stop it, plaintiff might be suing them on a deliberate indifference to safety claim rather than an excessive force claim.)

The parties disagree about whether one of the gas launchers shot plaintiff in the head. Plaintiff contends that defendants shot him in the head causing "neurological nerve damage." (Compl. at 7.) This is contradicted by the incident reports, which show that most of the shots missed their targets, and that the few shots that hit inmates struck them in their legs and buttocks. (Dkt. no. 33-4 at 3; Loza Decl. Ex. 1; Ponce Decl. Ex. 2; Herrera Decl. Ex. 3.) Moreover, defendants have stated that they did not fire any rounds at plaintiff's head and that none of the rounds that were fired appeared to hit plaintiff in the head. (Loza Decl. ¶ 5; Ponce Decl. ¶ 5; Herrera Decl. ¶ 5.) Plaintiff was treated at the hospital and was discharged the same day. (Dkt. no. 34-7.)

Even assuming plaintiff was struck in the head by a round, and that the shot caused severe injury, the undisputed evidence shows that all rounds were fired in an attempt to quell a gang fight that plaintiff himself initiated. Moreover, in Hudson, the court focused on whether the slight nature of the injury inflicted could defeat an Eighth Amendment claim, rather than whether an extreme injury always meant the force was excessive. See Hudson, 503 U.S. at 7. This one factor is not dispositive and does not overcome the fact that all the other factors weigh heavily in favor of a finding that the force used was necessary under the circumstances.

Viewing the evidence in the light most favorable to plaintiff, any reasonable jury would determine that the gas launchers and single multi-wood round were used in a good-faith effort to restore order, and no reasonable jury could find that defendants used the launchers maliciously and sadistically to cause harm. Plaintiff has failed to establish a triable issue of fact that he was subjected to excessive force by any of the defendants. Defendants Herrera, Ponce, and Loza therefore are entitled to judgment as a matter of law on the Eighth Amendment excessive force claim.

### C.     Qualified Immunity

Defendants claim that summary judgment is also proper in this case because they are

1  entitled to qualified immunity from liability for civil damages.  The defense of qualified immunity
2  protects "government officials . . . from liability for civil damages insofar as their conduct does not
3  violate clearly established statutory or constitutional rights of which a reasonable person would
4  have known."  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  The threshold question in
5  qualified immunity analysis is: "Taken in the light most favorable to the party asserting the injury,
6  do the facts alleged show the officer's conduct violated a constitutional right?"  Saucier v. Katz,
7  533 U.S. 194, 201 (2001).  A court considering a claim of qualified immunity must determine
8  whether the plaintiff has alleged the deprivation of an actual constitutional right and whether such
9  right was "clearly established."  Pearson v. Callahan, 555 U.S. 223, 129 S. Ct. 808, 818 (2009)
10 (overruling the sequence of the two-part test that required determination of a deprivation first and
11 then whether such right was clearly established, as had been required by Saucier, and holding that
12 a court may exercise its discretion in deciding which prong to address first, in light of the
13 particular circumstances of each case).  The relevant, dispositive inquiry in determining whether a
14 right is clearly established is whether it would be clear to a reasonable officer that his conduct was
15 unlawful in the situation he confronted.  Saucier, 533 U.S. at 201-02.

16 Here, as discussed above, the evidence does not indicate that defendants' actions rose to the
17 level of a constitutional violation.  However, assuming that plaintiff was deprived of a
18 constitutional right, the next prong is whether defendants' conduct was clearly unlawful.  It was
19 not.  Defendants have produced sufficient evidence that a reasonable officer in their position
20 would have believed that their actions were reasonable based on the circumstances they
21 confronted.  Defendants were reasonable in attempting to quell a gang fight.  The inmates ignored
22 orders to stop fighting.  Defendants were concerned that the inmates could seriously hurt or kill
23 each other and only fired rounds in an attempt to stop the fighting.  They did not fire any rounds
24 after the fighting finally ended.  Based on the inmates' aggressive behavior and resistance to verbal
25 orders, it would not have been clear to a reasonable officer that the immediate use of force by
26 defendants was unlawful.  Because the law and circumstances on June 24, 2008 did not put
27 defendants individually on notice that their conduct would be clearly unlawful, summary judgment
28 based on qualified immunity is appropriate.  See Saucier, 533 U.S. at 202.

### D.  Supervisory Liability Claim against Defendant M. Kircher

Plaintiff also alleges that defendant M. Kircher is liable in his capacity as a supervisor. Specifically, plaintiff alleges that M. Kircher was the sergeant that led the response team that day and that he "did not exercise his supervisory responsibility in carrying out decisions involving the use of force to restore order, and a less forceful means of intervention under the circumstances surrounding plaintiff's incident." (Compl. at 10-11.)

A supervisor may be liable under § 1983 upon a showing of (1) personal involvement in the constitutional deprivation or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation.  Redman v. County of San Diego, 942 F.2d 1435, 1446 (9th Cir. 1991) (en banc) (citation omitted).  A supervisor therefore generally "is only liable for constitutional violations of his subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them." Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989).

As discussed above, plaintiff has failed to raise a triable issue of material fact that he was subjected to excessive force.  Therefore, plaintiff has failed to produce sufficient evidence regarding an essential element of his supervisory liability claim, i.e., an underlying constitutional violation.  Accordingly, the Court finds that defendant M. Kircher is not liable, as a supervisor, for excessive force against plaintiff, and M. Kircher is entitled to summary judgment on this claim.

### CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment is GRANTED.

The Clerk shall enter judgment and close the file.

This order terminates Docket No. 55.

**IT IS SO ORDERED.**

Dated:  February 10, 2014

_____
JON S. TIGAR
United States District Judge